# SUPREME COURT.

## JACOB LEFEVER agt. WM. H. BRIGHAM & DAVID CRAWFORD.

Before the amendment, in 1851, of the 397th section of the Code, it authorized a party plaintiff or defendant to examine his co-plaintiff or co-defendant, in all actions, whether upon joint contract or not, the same as any other witness. It was without exception or restriction. But the *effect* to be given to his testimony, after it was received, was limited. That is, upon the issue between the adverse party and himself, his testimony was not to be considered at all. The section stated, that the examination thus taken should not be used on behalf of the party examined

The section was amended in 1851, so as to restrict the examination of a party to *matters* in which he is not jointly interested or liable with the party calling. him as a witness, and in respect to which a separate, and not a joint verdict or judgment, might be rendered.

It was supposed that, under this amendment, a new rule of examination and test of competency were to be applied. Instead of examining the witness, when received, as to every matter pertinent to the issue, as before, he might be examined as to some matters, and as to other matters his testimony would be excluded. Two elements were involved in the determination of the question, whether the testimony of such a witness would be admissible: the one related to the question of interest, and the other to the character of the judgment which might be rendered in the action. If a joint judgment *could not*, and a separate judgment *could* be rendered in respect to the matter as to which it was proposed to examine the party witness, and he was found not to be jointly interested or liable with the co-plaintiff or co-defendant calling him, in respect to such matters, then, and then only, could his testimony be *received*.

*Held*, that the decision in *Beals* agt. *Finch*, by which the court of appeals has given a construction to the section, as amended in 1851, must be regarded as, in effect, repealing the clause of the amendment relating to a "joint verdict or judgment."

Now, there can be no possible case in which a plaintiff or a defendant may not offer his co-plaintiff or co-defendant as a witness, and have him received. For, there is no case in which a separate judgment may not be rendered for one plaintiff or defendant and against another. The party, therefore, as the section is now construed, is in all cases, when offered, to be admitted as a witness. Having been admitted and sworn, his examination is to be restricted to "matters in which he is not jointly interested or liable with the co-plaintiff or co-defendant" who has called him.

*Held*, that the practice, suggested in the leading opinion in *Beals* agt. *Finch*, of receiving the testimony of parties *de bene esse* in "doubtful cases," and then

instructing the jury that if they acquit the witness, and thus find him compe-
tent, they should consider the testimony; but if they convict him, then reject
the testimony, can never be tolerated.

*Albany General Term, September,* 1854.
WRIGHT, HARRIS, and WATSON, Justices.
Motion for new trial.

The action was for assault and battery, and false imprison-
ment. It was tried at the Ulster circuit in November, 1853,
before Mr. Justice HARRIS. Upon the trial the plaintiff proved
that, while riding upon his wagon in the evening, he was seized
by the defendants, and taken about two miles to their residence,
and there detained the greater part of the night.

The plaintiff having rested, the defendant, Brigham, offered
his co-defendant, Crawford, as a witness on his behalf. He
was objected to by the plaintiff's counsel, and excluded. The
counsel for the defendant, Brigham, excepted to the decision.
The counsel for the defendant, Crawford, then offered the de-
fendant Brigham as a witness in his behalf. He was also object-
ed to, and excluded. An exception was taken in like manner.
The defendants moved for a new trial, upon the ground that
they should have been received as witnesses for each other.

E. COOKE, *for plaintiff.*

M. SCHOONMAKER, *for defendants.*

By the court—HARRIS, Justice. The 397th section of the
Code, as it stood prior to the amendment of 1851, authorized
any defendant to examine his co-defendant as a witness. It
was declared, that a party might be examined on behalf of his
co-plaintiff, or a co-defendant. The rule, as declared by the
legislature, was without exception or restriction. But the
effect to be given to his testimony was limited. *Being* admitted
as a witness, he might be examined, like other witnesses, upon
any matter pertinent to the issue. His testimony, like that of
any other witness, was entitled to its due weight in the deter-
termination of the issue between the adverse party and the
party by whom he was called; but, upon the issue between

the adverse party and himself, his testimony was not to be considered at all. The mandate of the legislature was, that the examination of a party thus taken should not be used on his own behalf. The doctrine of the dissenting opinion in *The Mechanics' and Farmers' Bank* agt. *Rider*, (5 *How.* 401,) and which has just been reiterated by the same distinguished judge in the court of appeals, (*see Beals* agt. *Finch*, 1 *Kernan*, 128, and 9 *How.* 385,) that when the action was upon a joint contract, and the defendant calling his co-defendant as a witness, had no separate defence, the witness should be rejected on the ground of interest, finds no countenance in the section of the Code in question, as it was originally enacted. The provision that his testimony should not be used on his own behalf, had the effect to remove the disqualification of interest. The witness testified with the knowledge that his testimony would only be available upon the issue between his co-defendant and the adverse party.

But the examination of a witness under such circumstances, was, I admit, quite objectionable. It rendered it necessary for the jury "to separate, in their minds, the evidence given by a defendant for his co-defendant, from the other evidence, so that the witness should not himself be benefited by his own testimony." As is well said by my brother PARKER, in *Beals* agt. *Finch*, above cited, this was regarded as a difficult thing. The same difficulty had, indeed, existed before the adoption of the Code, in other cases, as when the action was brought against the maker and endorser of a note. But the practice was deemed sufficiently objectionable to require the action of the legislature. Accordingly, in July, 1851, the section of the Code under consideration was amended, so as to restrict the examination of a party to *matters* in which he is not jointly interested or liable with the party calling him as a witness, and in respect to which a separate, and not a joint verdict or judgment might be rendered.

The test of competency was thus radically changed. Before, any party, whether plaintiff or defendant, might be made a witness by his co-plaintiff or co-defendant. Being admitted

as a witness, he was to be examined upon the same principles, and by the same rules of evidence, as any other witness. The restriction was upon *the effect* which should be given to his evidence after it should be received. But after the amendment, a new rule of examination was to be applied. Instead of examining the witness, when received, as to every matter pertinent to the issue, as before, he might be examined as to some matters, and as to other matters his testimony would be excluded. Two elements were involved in the determination of the question whether the testimony of such a witness would be admissible. The one related to the question of interest, and the other to the character of the judgment which might be rendered in the action. If a joint judgment *could not*, and a separate judgment *could* be rendered in respect to the matter as to which it was proposed to examine the party witness, and he was found not to be jointly interested or liable with the co-plaintiff or co-defendant calling him in respect to such matter, then, and then only, could his testimony be received. It seemed to follow, that in many, perhaps a large majority of cases, a party could not be examined as a witness for his co-plaintiff or co-defendant at all. For there are but comparatively few cases in which a joint judgment may not be rendered against the plaintiffs or defendants.

My learned brother, in delivering the opinion of the court of appeals, in the case before cited, has stated that this radical change in the 397th section of the Code, was only made "for the purpose of expressing in terms what before existed by necessary implication," and that the amendment was adopted, not, like other legislative amendments, for the improvement of the law, but "to correct what was deemed an erroneous construction put on the act," in the case of *The Mechanics' and Farmers' Bank* agt. *Rider*. That this was indeed so, is said to be a notorious fact; and, to show that he and the legislature thought alike on the subject, the learned judge has taken occasion to refer to his dissenting opinion in the case last mentioned. That the discussion of the subject in the case thus referred to, led to the change made in the section in 1851, I am

inclined to believe; but I cannot admit that my learned brother is warranted in asserting that the object of the legislature was, acting in the capacity of an appellate tribunal, to overrule what it regarded as an erroneous judgment, by adopting an amendment merely declaratory in its character. I certainly entertain a very great respect for the judicial opinions of that judge; but I think he overvalues the strength of the argument in the dissenting opinion to which he refers, when he supposes that it induced the legislature to interfere, summarily to correct the error into which the majority of the court had fallen, instead of leaving it as the appropriate work of an appellate court. It is fairer, I think, to attribute the action of the legislature to a desire to amend the law, rather than an attempt to interfere with judicial construction, however erroneous it may be deemed.

Another eminent judge, in delivering his views upon the question under consideration in *Beals* agt. *Finch*, has taken occasion to say, that in deciding the case of *Munson* agt. *Hegeman*, which arose prior to the amendment of 1851, it had been held by the court of appeals, that where the party to be examined, and his co-plaintiff or co-defendant, were jointly interested or liable, and separate judgments could not be rendered, he could not be received as a witness. Such may have been the views of some, perhaps all the members of the court; but it is not quite accurate to say that any such question was decided.

It cannot be pretended that the case mentioned presented the question for adjudication. Whatever may have been said on the subject, is entitled to such respect as is due to the opinions of distinguished jurists, but not to obedience as an authoritative judgment. The question never came before the court of appeals for its judicial determination. Of course, it was never adjudged.

The decision in *Beals* agt. *Finch*, by which the court of appeals has given a construction to the section under consideration as it was amended in 1851, must be regarded as, in effect, repealing the clause of the amendment relating to a "joint ver-

dict or judgment." Were I quite sure that it would not be deemed disrespectful, I would denominate the decision as " the amendment of 1854," adopted, not by the legislature, but by the court of appeals, acting in its legislative capacity. I approve of the amendment. I think the section, as it has now been altered, prescribes a better rule of evidence than that adopted by the legislature. Now, there can be no possible case in which a plaintiff or a defendant may not offer his co-plaintiff or co-defendant as a witness, and have him received. For, there is no case in which a separate judgment may not be rendered for one plaintiff or defendant, and against another. The party, therefore, as the section is now construed or amended, is in all cases, when offered, to be admitted as a witness. Having been admitted and sworn, his examination is to be restricted to " matters in which he is not jointly interested or liable with the co-plaintiff or co-defendant " who has called him. Thus, it will often happen that, though he cannot be rejected as an incompetent witness, he will not be allowed to testify, after he has been received, for the reason that he can say nothing, except upon questions in respect to which he is jointly interested or liable with the party calling him.

The change which has thus been effected will, I am persuaded, work well in practice. Had I occupied a seat in the legislature, I most certainly would have voted for its adoption. My only objection to it is, that it is the result of the exercise of legislative powers by a high judicial tribunal. As the section stood before this change, it was sometimes a matter of some difficulty to determine whether a party offered as a witness should be received or not; but now, as before the amendment, every party offered will be received, and the only question for the court will be, after the witness has been sworn, to determine the matters in respect to which he may be examined.

The effect of the decision in *Beals* agt. *Finch*, upon the case now in hand, is to entitle the defendants to a new trial. They will have the right to offer each other as witnesses, and each must be sworn. But, having been sworn, I do not see how, unless the case should be materially changed upon a second

Lefever agt. Brigham and Crawford.

trial, either could give any material testimony for the other. As in every other case, so, here, a separate judgment may be rendered against either of the defendants. But, as the case was left by the plaintiff's proofs, enough was shown to require that the case should be submitted to the jury as against both. It is not likely that either defendant will be able to give pertinent evidence upon any matter as to which he is not jointly interested with his co-defendant.

The practice, suggested in the leading opinion in *Beals* agt. *Finch*, of receiving the testimony of parties *de bene esse* in "doubtful cases," and then instructing the jury that, if they acquit the witness, and thus find him competent, they should consider the testimony, but if they convict him, then to reject the testimony, can never be tolerated. The evils which such a course of proceeding would introduce, would far exceed those which led to the amendment of 1851.

While, therefore, it is not probable that either of the defendants, upon another trial, will be allowed to testify at all, yet, under the decision of the court of appeals, they are entitled to have each other sworn as witnesses, and then to offer their testimony. A new trial must therefore be awarded.

NOTE.—It is a good opportunity now to correct a small but important mistake in the "head-note" to *Beals* agt *Finch*, (9 *How.* 385,) by which the types are made to say, in the second paragraph, the reverse of what was intended. The word "not," in the last line but one, immediately before the word "separately," should have been put in the last line immediately before the words "*jointly interested.*"